IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL ACTION |
| | : | |
| v. | : | |
| | : | |
| KHALEEF DANIELS | : | NO. 09-569-01 |

## MEMORANDUM

**Padova, J.**                                                                                    **May 27, 2010**

Defendant Khaleef Daniels has been charged with one count of conspiring to making false statements to a federal firearms dealer, in violation of 18 U.S.C. § 371 (Count 1); one count of making false statements to a federal firearms dealer, aiding and abetting, in violation of 18 U.S.C. §§ 924(a)(1)(A) and 2 (Count 2); six counts of making false statements to a federal firearms dealer, in violation of 18 U.S.C. § 924(a)(1)(A) (Counts 3-8); one count of possession with intent to distribute 5 grams or more of cocaine base, in violation of 21 U.S.C. § 924(c)(1) (Count 9); and one count of possessing a firearm in furtherance of a drug trafficking crime, in violation of 21 U.S.C. § 924(c) (Count 10).

Presently before the Court is Mr. Daniels's Motion to Suppress four statements that he made during a search of his home. Mr. Daniels argues that the statements were the product of custodial interrogation, obtained in violation of his Miranda rights. The Government argues that the statements were spontaneous utterances and not the product of any interrogation, and therefore are admissible in spite of the absence of Miranda warnings. After a hearing on May 11, 2010, we granted Mr. Daniels's Motion with respect to two of his statements and deferred decision regarding the other two statements. For the following reasons, we now deny the Motion with respect to the two statements on which we deferred decision.

## I.    BACKGROUND

The following facts were developed at the May 11, 2010 hearing.  On October 24, 2006, Philadelphia police detectives James Kopaczewski and Christopher Marano, along with ten to twelve other Philadelphia police officers, executed a search warrant at 2032 South Hemberger Street, in Philadelphia.  (5/11/2010 N.T. at 8, 35.)  Upon arriving at the row home at that address, the officers knocked on the door, but received no response.  (Id. at 8.)   They therefore entered the house using a battering ram.  (Id. at 16.)  Upon crossing the threshhold, the officers entered into the row home's living room.  (Id. at 9.)  There was a couch to the officers' left, and a hospital bed next to the couch.  (Id.)  Mr. Daniels, who is wheelchair-bound, was asleep on the bed.  (Id. at 8-9.)   Detective Kopaczewski and two other officers sat Mr. Daniels up on the bed, while "the rest of [the] team swept the house."  (Id. at 9.)

Detective Kopaczewski told Mr. Daniels his name and stated that he had a search warrant for his residence for firearms.  (Id. at 10, 18.)  He then asked Mr. Daniels if there were any firearms in the residence and Mr. Daniels replied that there were not (the "first statement").  (Id. at 10.) Detective Kopaczewski and another officer then lifted Mr. Daniels up, checked to see if he had any weapons on his person, and then placed him in a wheelchair that was sitting right next to the bed.  (Id.) Detective Kopaczewski then lifted up the mattress and found a Glock .45 caliber firearm loaded with fourteen rounds, one in the chamber and thirteen in the clip.  (Id.)  As he began the procedure to render the firearm safe, Mr. Daniels stated, "Watch it, it has a head in it.  It's mine.  Niggers are after me."  (the "second statement").  (Id.)  At this point, about two minutes had passed since Detective Kopaczewski asked Mr. Daniels if there were any firearms in the residence.  (Id. at 24-25.)

Approximately five minutes later, Detective Marano, having noted that Mr. Daniels was

wearing only a t-shirt and an adult diaper, asked Mr. Daniels if he wanted a pair of pants, and Mr. Daniels responded that he did. (Id. at 10, 36.) There were pants hanging partially on the bed and partially on the couch, and Detective Marano picked them up and asked Mr. Daniels, "Are these yours?" (Id. at 10-11, 29, 36-37.) Mr. Daniels replied "yes" (the "third statement"). (Id. at 11.) Detective Marano searched the pants, reaching into the pants pocket, and pulled out a clear plastic baggie which contained 31 smaller plastic baggies. (Id.) He "looked at [Mr. Daniels] as if to say are you kidding," and showed the drugs to Mr. Daniels. (Id. at 37, 40-41.) Detective Marano did not, however, ask Mr. Daniels if the drugs were his. (Id. at 42.) Nevertheless, Mr. Daniels then stated, "I knew you were going to find them anyway." (the "fourth statement"). (Id. at 11, 37-38, 42.)

Mr. Daniels argued in his Motion to Suppress that the Court should suppress all four statements he made during the execution of the search warrant. At the May 11, 2010 hearing, we granted his Motion insofar as it sought suppression of Mr. Daniels's first and third statements, which were in response to the executing officers' two direct questions, i.e., his "no" response to the question of whether there were firearms in his house, and his "yes" response to the question of whether the pair of pants on the bed belonged to him. (See id. at 57; 5/11/10 Order at ¶ 7a.) However, we deferred decision regarding the second and fourth statements, i.e., "Watch it, it has a head in it. It's mine. Niggers are after me," and "I knew you were going to find them anyway." (5/11/10 Order at ¶ 7b.) We asked the parties to submit supplemental briefing on the question of whether these two statements, neither of which were prompted by direct questions, were somehow contaminated by the Miranda violations that preceded them.

## II.    LEGAL STANDARD

In Miranda v. Arizona, 384 U.S. 436 (1966), the Supreme Court held that a person who is

subject to "custodial interrogation" must "be warned that he has a right to remain silent, that any statement that he does make may be used as evidence against him, and that he has a right to the presence of an attorney . . . ." Id. at 444. A statement is the product of police interrogation if it is the result of "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom in any significant way." Id. "Interrogation" includes not only "express questioning," but also any "words or actions on the part of the police . . . that the police should know are reasonably likely to elicit an incriminating response from a suspect." Rhode Island v. Innis, 446 U.S. 291, 300-01 (1980). An "incriminating response" is "any response – whether inculpatory or exculpatory – that the *prosecution* may seek to introduce at trial." Id. at 302 n.5. Miranda does not "have application to a situation where one, not under stress of interrogation, simply volunteers a statement which perchance turns out to be inculpatory." United States v. Fioravanti, 412 F.2d 407, 413-14 (3d Cir. 1969); Miranda, 384 U.S. at 478 ("Volunteered statements of any kind are not barred by the Fifth Amendment and their admissibility is not affected by our holding today.").

Where a defendant seeks to suppress statements given to law enforcement, "'the government bears the burden of establishing by a preponderance of the evidence that the statement was not the product of custodial interrogation conducted in the absence of Miranda warnings.'" United States v. Barnes, Crim. A. No. 05-134, 2005 WL 1899502, * 2 (E.D. Pa. Aug. 8, 2005) (quoting United States v. DeSumma, 44 F. Supp. 2d 700, 703 (E.D. Pa. 1999)).

## III.   DISCUSSION

Mr. Daniels argues that the second and fourth statements should be suppressed for two essential reasons. First, he argues that Detectives Kopaczewski and Marano elicited the statements "by virtue of their conduct," without first advising him of his Miranda rights. Def.'s Mem at Second,

he argues that the statements were not voluntary, because he made them immediately after, and during the same search in which, he was asked questions that we have already determined constituted custodial interrogation. We disagree that either of these reasons supports suppression of the two remaining statements.

We first conclude, based on the evidence presented at the hearing, that the detectives did not elicit the two statements at issue with either direct questioning or "words or actions" that they should have known were "reasonably likely to elicit an incriminating response." Innis, 446 U.S. at 301. Detective Kopaczewski's credible testimony at the hearing was that the second statement immediately followed the detective's physical efforts to make the firearm safe, not any questioning. Likewise, Detective Marano's credible testimony at the hearing made clear that the fourth statement was not responsive to any questioning, but rather was a spontaneous response to Detective Marano's finding the crack cocaine packets in Mr. Daniels's pants. Moreover, we conclude without hesitation that neither Detective Kopaczewski's efforts to make the gun safe nor Detective Marano's showing the drugs to Mr. Daniels constituted actions that the detectives should have known was reasonably likely to elicit an incriminating response. Accordingly, we conclude that the second and fourth statements were not products of custodial interrogation, and the detectives were not required to give Mr. Daniels any Miranda warnings before the statements were made.

Mr. Daniels also argues that the two statements at issue should be suppressed because they were not voluntarily made insofar as they were derived from the preceding Miranda violations. In support of this argument, Mr. Daniels primarily relies on a case from the United States Court of Appeals for the First Circuit, United States v. Byram, 145 F.3d 405 (1st Cir. 1998). The Byram court, employing a doctrine similar to the "fruit of the poisonous tree" doctrine, concluded that a second

statement taken from a defendant after a preceding <u>Miranda</u> violation may be suppressed under certain limited circumstances. <u>Id.</u> at 409-11. <u>Byram</u> sets forth three factors that a district court should consider in ascertaining whether to suppress the second statement: (1) whether the initial <u>Miranda</u> violation was merely technical; (2) whether there is a substantial nexus between the initial violation and the subsequent statement; and (3) whether the subsequent voluntary statement is itself preceded by <u>Miranda</u> warnings. <u>Id.</u> at 409-10. According to Mr. Daniels, application of this test in the instant case must result in the suppression of the second and fourth statements, because the prior <u>Miranda</u> violations were not technical, the statements were "connected to the immediately preceding unlawful questions and concerned the same subject matter as the unlawful questions," and the latter statements, like the earlier ones, were not preceded by <u>Miranda</u> warnings. (Def.'s Suppl. Mem. at 4.)

However, contrary to Mr. Daniels's suggestion, <u>Byram</u> is not a statement of the law in this Circuit. Indeed, the United States Court of Appeals for the Third Circuit, unlike the First Circuit, has refused to apply a fruit of the poisonous tree analysis in connection with <u>Miranda</u> violations. <u>United States v. DeSumma</u>, 272 F.3d 176, 180 (3d Cir. 2001) ("We hold that the fruit of the poisonous tree doctrine does not apply to derivative evidence secured as a result of a voluntary statement obtained before <u>Miranda</u> warnings are issued."); <u>United States v. Johnson</u>, 816 F.2d 918, 922 (3d Cir. 1987) (summarizing the Supreme Court's decision in <u>Oregon v. Elstad</u>, 470 U.S. 298 (1985), as "specifically reject[ing] the proposition that the 'fruit of the poisonous tree' doctrine, which in the fourth amendment context requires the exclusion of evidence or confessions obtained as a result of a constitutional violation, extends to violations of the <u>Miranda</u> decision"). Thus, we conclude that the <u>Byram</u> test is not applicable here.

We also reject Mr. Daniels's underlying suggestion that his second and fourth statements

should be suppressed because they were coerced rather than voluntary and, thus, violated the Fifth Amendment's protections against self-incrimination. "A statement is given voluntarily, if when viewed in the totality of the circumstances, it is the product of an essentially free and unconstrained choice by its maker." United States v. Jacobs, 431 F.3d 99, 108 (3d Cir. 2005) (citations omitted). In order to find that a statement was involuntary, the court must first find that there was coercive police activity. Id.

Here, as explained above, Mr. Daniels contends that his statements were involuntary, because they were made in close temporal proximity to the preceding Miranda violations, and were made to the same detectives, and in the same location, as the statements that we have suppressed as violative of Miranda. However, under a totality of the circumstances analysis, we find that, in spite of the two Miranda violations, all four of Mr. Daniels's statements were voluntary. Elstad, 470 U.S. at 314 ("[A]bsent deliberately coercive or improper tactics in obtaining [a] statement, the mere fact that a suspect has made an unwarned admission does not warrant a presumption of compulsion.") The evidence at the hearing established that Detectives Kopaczewski and Marano acted professionally and courteously, without utilizing any deliberately coercive or improper tactics, and without deliberately attempting to exploit Mr. Daniels's custodial situation. Under these circumstances, the mere fact that the detectives asked Mr. Daniels two relatively innocuous questions that nevertheless should have been preceded by Miranda warnings does not warrant the suppression of the other statements that Mr. Daniels spontaneously uttered in the course of the search of his home.

## IV.    CONCLUSION

For the foregoing reasons, we deny Mr. Daniels's Motion to Suppress insofar as it seeks suppression of the second and fourth statements.  An appropriate Order follows.

BY THE COURT:

/s/ John R. Padova, J.

_____

John R. Padova, J.